UNITED STATES of America, Plaintiff,

v.

Robert A. DURCHSLAG, Defendant.

No. 82 CR 200, 85 CR 317.

United States District Court,
N.D. Illinois, E.D.

April 26, 1990.

Ira H. Raphaelson, Interim U.S. Atty. by David Glockner, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Jonathan Shapiro, Stern & Shapiro, Boston, Mass., Sarah Jennings Hunt, Cambridge, Mass., for defendant.

## ORDER

BUA, District Judge.

Robert Durchslag's desire to contrive fraudulent schemes first became evident in 1982, when he was convicted of writing approximately $1.3 million in counterfeit money orders. (82 CR 200.) On December 17, 1982, former U.S. District Court Judge George N. Leighton sentenced Durchslag to five years of probation on each of two counts of interstate transportation of forged securities. Within two years of receiving that sentence, Durchslag engaged in a bank fraud scheme. He then fled to Europe, only to be later apprehended in Switzerland by the U.S. Marshals. Following his return to the United States, Durchslag pled guilty to two counts of bank theft. (85 CR 317.) In connection with that crime, Judge Leighton sentenced Durchslag to five years of imprisonment and a consecutive five-year term of probation. The judge also revoked the probationary terms he previously imposed in 1982, and sentenced Durchslag to five years of incarceration on both counts of Durchslag's 1982 conviction. In an order dated March 28, 1986, Judge Leighton modified that sentence and reimposed the five-year terms of probation he previously revoked. These probationary terms were to be served concurrently with the probationary term imposed on Durchslag's 1985 conviction.

On January 27, 1988, Durchslag was released on parole. Undeterred by his prior convictions, Durchslag promptly embarked on a nationwide crime spree. He left a trail of defrauded victims across the country, including a Chicago bank which he attempted to defraud out of approximately $6 million. After Durchslag was arrested, he pled guilty to bank fraud, interstate transportation of a stolen automobile, and fraudulent use of credit cards. (88 CR 819.) Based on Durchslag's guilty plea, the government moved to revoke his probation.[1] At sentencing, the government's motion to revoke Durchslag's probation was taken under advisement. The court will now address the government's motion.

As an initial matter, the court must decide whether it even has the authority to revoke Durchslag's probation. Federal

1. Following Judge Leighton's retirement, supervision of Durchslag's probation was reassigned: case number 82 CR 200 was reassigned to Judge Plunkett and 85 CR 317 was reassigned to Judge Aspen. In the interest of judicial economy, both parties agreed to consolidate the probation revocation proceedings before this court.

courts are given the authority to grant or revoke probation by Congress. *Affronti v. United States*, 350 U.S. 79, 83, 76 S.Ct. 171, 173, 100 L.Ed. 62 (1955). This authority stems from Congress' enactment of the Probation Act, 18 U.S.C. §§ 3561–3566 (Supp.1990). The Probation Act, however, should be interpreted to "avoid interference with the parole and clemency powers vested in the Executive Branch." *Affronti*, 350 U.S. at 83, 76 S.Ct. at 173. Nonetheless, the judiciary is vested with an "exceptional degree of flexibility" in applying the Act's provisions. *Burns v. United States*, 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266 (1932).

■ Durchslag argues that the court cannot revoke probation for an offense committed prior to the commencement of his probationary term. Although the Seventh Circuit has already ruled that a district court may revoke probation based on a pre-probation offense, see *United States v. Yancey*, 827 F.2d 83, 88 (7th Cir.1987), *cert. denied*, 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 437 (1988), Durchslag claims that such precedent is inapplicable to the case at bar. He attributes significance to the fact that he was under parole supervision at the time of the pre-probation offense—a factor not present in the *Yancey* case. According to Durchslag, a court may not revoke probation based on an offense committed while on parole because of the need to avoid interference with the parole authority vested in the executive branch or, more specifically, the U.S. Parole Commission. *See United States v. Wright*, 744 F.2d 1127, 1130–31 (5th Cir.1984).

In support of his position, Durchslag relies on the Supreme Court's decision in *Affronti v. United States, supra.* Durchslag's reliance on *Affronti*, however, is misplaced. The *Affronti* Court did not even address, much less limit, the judiciary's authority to revoke probation. Rather, *Affronti* was only concerned with the power to grant probation. 350 U.S. at 81–82, 76 S.Ct. at 172–173; *see also United States v. Murray*, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928). The Court held that a district court does not have the authority to suspend a sentence and grant probation once the defendant has begun serving his term of incarceration. *Affronti*, 350 U.S. at 83–84, 76 S.Ct. at 173–174. By granting probation after the defendant has been committed to the custody of the executive branch, the court necessarily intrudes upon the executive's parole and clemency powers. *Id.*

Revocation of probation, in contrast, does not pose the same kind of threat to the independent functioning of the executive branch. *See United States v. Daly*, 839 F.2d 598, 601 (9th Cir.1988) ("Obviously, a decision to revoke probation in no way interferes with the executive parole or clemency power."). When a court decides to revoke probation, the parole authorities remain free to make whatever adjustments to the defendant's term of imprisonment that they deem to be appropriate. *United States v. Camarata*, 828 F.2d 974, 979 (3d Cir.1987), *cert. denied*, 484 U.S. 1069, 108 S.Ct. 1036, 98 L.Ed.2d 1000 (1988). Probation revocation is entirely a judicial function, and it does not somehow enter the realm of the executive branch once the defendant is released on parole.

In the absence of any apparent conflict with the prerogatives of the executive branch, the court sees no reason why probation cannot be revoked based on an offense committed while on parole. There is nothing in the Probation Act to suggest that the judiciary's power to revoke probation loses any of its force when a defendant is paroled. Effective November 1, 1987, the Act was amended to provide that a court can revoke probation "[i]f the defendant violates a condition of probation at *any time prior* to the expiration or termination of the term of probation." 18 U.S.C. § 3565(a) (Supp.1990) (emphasis added). Thus, Congress' intent that the court retain continuing authority to revoke probation for any pre-probation offense seems clear. "[G]ranting the power to revoke probation permits the correction of a sentence based on an erroneous assumption that defendant would likely benefit from leniency." *United States v. Veatch*, 792 F.2d 48, 52 (3d

Cir.), *cert. denied,* 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986).[2]

For the foregoing reasons, this court concludes that it has the authority to revoke Durchslag's probation. The only question remaining is whether it is appropriate to do so in this case. Quite frankly, this question presents little difficulty. Durchslag has not given any indication that he will benefit from leniency. He has repeatedly taken advantage of innocent victims—even while he was under supervision for previous crimes. Having pled guilty to bank fraud, interstate transportation of a stolen automobile, and fraudulent use of credit cards, Durchslag cannot argue that he did not violate the terms of his probation. *See Carchman v. Nash,* 473 U.S. 716, 731–32, 105 S.Ct. 3401, 3409–10, 87 L.Ed.2d 516 (1985) (probation violation is conclusively established by conviction). Based on Durchslag's continuous involvement in fraudulent schemes, the court finds that revocation of probation and imposition of a term of imprisonment consistent with his original offenses is warranted.

Accordingly, the court hereby revokes all three of Durchslag's five-year terms of probation and imposes three four-year terms of imprisonment to be served concurrently with the term of imprisonment imposed by this court in 88 CR 819. These four-year terms shall commence running on the date this order is entered; therefore, Durchslag will not receive credit for the time he has served since his arrest on January 6, 1989.

IT IS SO ORDERED.

---

**2.** Durchslag also argues that the double jeopardy clause of the fifth amendment is implicated when the same offense is used as a basis for revoking parole and probation. This argument is disingenuous. Durchslag was paroled on the condition that he refrain from engaging in criminal activity. When he violated the terms of parole, his previously-imposed sentence was simply reinstated, not increased. Likewise, revocation of probation and imposition of a term of imprisonment does not implicate the double jeopardy clause. The term of imprisonment flows from a previously-imposed condition, and it is not tantamount to an unlawful multiple sentence. *See United States v. DiFrancesco,* 449 U.S. 117, 137, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980) ("there is no double jeopardy protection against revocation of probation and the imposition of imprisonment"); *see also United States v. Redd,* 759 F.2d 699, 701 (9th Cir.1985) (defendant's double jeopardy rights were not violated when the court used the same offense to revoke defendant's travel authorization as well as his probation).