UNITED STATES of America, Plaintiff,

v.

Matthew J. MYERS, Defendant.

No. G86–92–01–CR.

United States District Court,
W.D. Michigan, S.D.

June 23, 1992.

Julie Ann Woods, Asst. U.S. Atty., Grand Rapids, Mich., for U.S.

Daniel R. Gravelyn, Kevin G. Dougherty, Devin S. Schindler, Warner, Norcross & Judd, Grand Rapids, Mich., for Matthew J. Myers.

## OPINION AND ORDER ON DEFENDANT'S MOTION TO VACATE SHOW CAUSE ORDER

MILES, Senior District Judge.

This matter is before the court on the defendant Matthew Myers' motion to vacate an order to show cause why his probation should not be revoked. The court held a hearing on the defendant's motion on May 8, 1992. For the reasons which follow, defendant's motion is DENIED.

### BACKGROUND

On July 27, 1987, defendant Matthew Myers was sentenced after pleading guilty to a three-count superseding information. The superseding information contained the following charges: (1) Count One—violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (2) Count Two—Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371; and (3) Count Three— Income Tax Evasion, in violation of 26 U.S.C. § 7201. Myers was originally sentenced to ten years in prison on Count One, five years in prison on Count Two (to run concurrently with the sentence in Count One), and five years probation on Count Three. On August 24, 1988, Myers' ten-year sentence of imprisonment on Count One was reduced to five years (still to run concurrently with the sentence imposed in Count Two), upon motion by Myers under Fed.R.Crim.P. 35.

Myers was taken into custody to begin serving his sentence on October 12, 1987. After serving approximately two-thirds of

his sentence, Myers was mandatorily released from prison on December 30, 1990. Upon his release, Myers was supervised by a United States Probation Officer.

On February 28, 1992, the court issued on order to show cause why Myers' probation should not be revoked, based upon an *ex parte* petition filed by his probation officer alleging that Myers had violated the general terms and conditions of his probation. More specifically, the petition alleged that on September 30, 1991, Myers provided a urine sample which tested positive for barbiturates, for which he had no medical prescription. The petition also alleged that during a visit to Myers' home on October 21, 1991, two probation officers confiscated 12 firearms which they found on the premises. Based upon these allegations, the court scheduled a show cause hearing for May 8, 1992. The show cause hearing was adjourned indefinitely by the court after Myers filed the present motion.[1]

## ANALYSIS

Myers argues that the court lacks the authority to revoke his probation for acts allegedly committed while he was on parole but before his probationary period had begun. Although other circuits have addressed this issue, the question appears to be one of first impression in the Sixth Circuit.

The first question which must be answered is—when did Myers' probationary period on Count Three begin? This question arises from a conflict between the written sentencing documents and the oral sentence imposed. If Myers was in fact on probation at the time of his alleged wrongful acts, it would be unnecessary to resolve the more difficult legal issue of whether the court may exercise its revocation authority.

The transcript of Myers' sentencing indicates that the court responded as follows to an inquiry by the United States Attorney:

MR. BRUHA: Thank you, your Honor. Two other small matters. There's also a question as to whether—as to when the period of probation ordered in Count 3 is to begin.

THE COURT: Begin upon the expiration of the sentences.

(Transcript of Sentence at 30). However, the Judgment and Probation/Commitment Order issued by the court two days later states that "the defendant is placed on probation for FIVE YEARS *to commence upon release from confinement* imposed in Counts 1 and 2." (emphasis supplied). Finally, the written Conditions of Probation and Supervised Release provided to Myers after his release from confinement—which he is charged with violating—state that his "term of supervision is for a period of 5 Years commencing April 13, 1992." [2]

Myers takes the position that his probation had not yet begun at the time of the alleged violations, arguing that the oral sentence imposed provided for its commencement "upon the expiration of the sentence" imposed on Counts One and Two. Because he was still on parole at the time of the alleged violations, he claims that his sentences on these two counts had not yet "expired." [3]

---

1. On October 28, 1991, Myers was returned to custody based on the allegation that he had unlawfully possessed firearms in violation of 18 U.S.C. § 922. Myers moved to dismiss his indictment on this charge, contending that he was not a "felon" for purposes of the Federal Gun Control Act because his civil rights had been restored pursuant to the operation of the laws of the State of Michigan. The indictment was dismissed without prejudice pending the outcome of two Sixth Circuit appeals which purportedly will decide this question. *United States v. Myers*, No. 1:91–CR–142 (W.D.Mich. February 18, 1992) (Enslen, J.). However, the United States Parole Commission did revoke Myers' parole based on the government's allegations of unauthorized use of barbiturates and possession

of firearms, ordering him to complete his sentences on Counts One and Two. Myers is presently confined pursuant to this parole revocation.

2. This document is a probation document; it is signed by Myers and by the probation officer but not by the court. The court is uncertain what the April 13, 1992 date signifies; presumably this was the date on which his parole was to conclude.

3. Myers' argument concerning when his probationary period begins is somewhat anomalous for a criminal defendant; in other words, he is actually arguing that the oral sentence imposed

When did the court intend for probation to commence? The court can categorically say that it intended for probation to commence *upon release from confinement*, as its written sentence explicitly states. Generally, however, an orally pronounced sentence controls over a judgment and commitment order when the two conflict. *United State v. Villano*, 816 F.2d 1448, 1450 (10th Cir.1987). The sentence orally pronounced from the bench *is* the sentence, and Myers' legal right to be present at his own sentencing would be abrogated were the court to merely assert its original intent at this juncture by ruling that the judgment and commitment order controls over the oral sentence. *Id.* at 1451–1452.

Where, however, the oral sentence is ambiguous, the judgment and commitment order is evidence which may be used to clarify the sentence. *Id.* at 1451; *see Sasser v. United States*, 352 F.2d 796, 797 (6th Cir.1965) ("the pronouncement of sentence represents the judgment of the court and ... the order of judgment is merely evidence of the sentence"). Was the court's oral sentence ambiguous? "Expiration" denotes a termination, or closure. As Myers has pointed out, the fact that he is currently incarcerated on the sentences imposed in Counts One and Two unequivocally demonstrates that these sentences have not yet terminated or "expired." The court must therefore conclude that despite its original intent, it conveyed the unambiguous impression that Myers' probation would not commence until the entire sentence imposed in Counts One and Two—including both incarceration and any parole period—had run its course.

Is Myers' probation subject to revocation even though it has not yet begun? The court's authority for the imposition and revocation of probation is governed by the probation statutes which preceded the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 235(a)(1), 98 Stat. 1976, 2031 (October 12, 1984), *amended by* Pub.L. No. 99–217, § 4, 99 Stat. 1728 (codified at 18 U.S.C. § 3565(a), effective November 1, 1987). The relevant statutory provisions were 18 U.S.C. § 3651 and 3653 (1982), which read in pertinent part as follows:

### § 3651  Suspension of sentence and probation

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best....

The court may revoke or modify any condition of probation, or may change the period of probation.

The period of probation, together with any extension thereof, shall not exceed five years....

### § 3653  Report of probation officer and arrest of probationer

... At any time within the probation period, the probation officer may for cause arrest the probationer wherever found, without a warrant. *At any time within the probation period* ... the court for the district in which the probationer is being supervised or if he is not longer under supervision, the court for the district in which he was last under supervision, may issue a warrant for his arrest for violation of probation occurring during the probation period.

.        .        .        .        .

should be construed *against* him, i.e., that his parole and probation do not run simultaneously, thus resulting in a longer total period of supervision. Though Myers himself waived the opportunity to be present at the hearing held on the present motion, his counsel assured the court that Myers was well aware of the argu-

ments being made on his behalf. The reason why this position is being taken is clear—Myers wishes to avoid the potential longer period of incarceration which could result from a revocation of his probation and resentencing on Count Three.

As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

(emphasis supplied).

Despite the language contained in § 3653, "[c]ourts have often sustained the revocation of probation for criminal activity committed prior to defendants going on probation even though the defendant, not yet being on probation, could not technically violate a condition of probation." *Tiitsman v. Black*, 536 F.2d 678, 682 (6th Cir. 1976). In recent years, a number of the circuits have adopted this broad construction of the probationary power, holding that probation may be revoked for acts performed before the beginning of the probationary term. *E.g., United States v. Taylor*, 931 F.2d 842 (11th Cir.1991); *United States v. Fryar*, 920 F.2d 252 (5th Cir. 1990); *United States v. Johnson*, 892 F.2d 369 (4th Cir.1989); *United States v. James*, 848 F.2d 160 (11th Cir.1988); *United States v. Daly*, 839 F.2d 598 (9th Cir.1988); *United States v. Camarata*, 828 F.2d 974 (3d Cir.1987); *United States v. Davis*, 828 F.2d 968 (3d Cir.1987); *United States v. Yancey*, 827 F.2d 83 (7th Cir.1987); *United States v. Veatch*, 792 F.2d 48 (3d Cir.1986); *United States v. Ross*, 503 F.2d 940 (5th Cir.1974); *United States v. Durchslag*, 735 F.Supp. 298 (N.D.Ill.1990).

■■■ Although recognizing that the probation authority has been so broadly construed, Myers nonetheless contends that the court's authority to revoke probation does not extend so far as to allow revocation for acts committed prior to the commencement of the probationary term where those same acts have served as the basis for a parole revocation.[4] There is some authority for this position. In *United States v. Wright*, 744 F.2d 1127 (5th Cir.1984), the Fifth Circuit held that although probation may be revoked before the defendant is incarcerated, once the defendant is on parole, probation may not be revoked. Similar to Myers, Wright had been convicted on both counts of a two-count indictment and had been sentenced to five years imprisonment on Count One and five years probation on Count Two, to run consecutive to the sentence in Count One. After his release on parole on Count One but before his probation began, Wright committed another offense, and the district court revoked his probation and imposed a three-year prison sentence on Count Two, to run consecutive to the remaining prison sentence on Count One. In reversing the revocation, the Fifth Circuit held that the district court had no authority to revoke Wright's parole once he had begun serving his sentence:

[T]he district court was without power, once the defendant commenced service of the first of cumulative sentences, to grant or to revoke probation as to a consecutive sentence, even though it had not yet commenced....

If our circuit decisions ... were correctly decided, then, they stand for a limited exception to the application of the literal wording of the probation statute: where the defendant receives a probationary sentence, it may be revoked because of an illegal act committed prior to its commencement only when the defendant had not commenced actual service of any sentence cumulatively imposed....

744 F.2d at 1131.

The *Wright* panel's expressed rationale for its decision was *Affronti v. United States*, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed.

---

**4.** Myers has not gone so far as to argue that revocation of both parole and probation based on the same conduct violates double jeopardy. Indeed, the Double Jeopardy Clause is not implicated by parole and probation revocation proceedings. *See United States v. Miller*, 797 F.2d 336, 340–41 (6th Cir.1986). This is so even where the defendant is later prosecuted for conduct for which a district court had previously declined—after hearing—to revoke probation imposed for a prior offense. *Id.* at 342 ("in the absence of double jeopardy implications, we find no compelling reason to prevent the government from prosecuting a probationer on charges for which it failed to obtain probation revocation.").

62 (1955). In *Affronti,* the Court held that once a defendant is imprisoned for any portion of a cumulative sentence, the district court's power to grant probation ceases with respect to all sentences composing a single cumulative sentence. *Id.* at 83, 76 S.Ct. at 173. In concluding that the power to grant probation ceases once service of a sentence begins, the court refused to apply the probationary statute "in such a way as to unnecessarily overlap the parole and executive-clemency provisions of the law." *Id.* The rationale for the holding was essentially separation of powers; in construing the probationary power—a judicial power—the Court wished to "avoid interference with the parole and clemency powers vested in the Executive branch." *Id.*

The holding of *Affronti* is consistent with the pre-Sentencing Guidelines statutory scheme, in which Congress legislated a division of sentencing responsibility, giving the district judges the authority to impose sentence within the statutory range while leaving the decision on when the defendant shall actually be released to the United States Parole Commission.[5] *Mistretta v. United States,* 488 U.S. 361, 365, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989); *United States v. Addonizio,* 442 U.S. 178, 188, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979). However, *Wright* goes too far in attempting to accommodate *Affronti*'s expressed concerns regarding deference to the division of powers. *Affronti* addressed only the district court's authority to *grant* probation after the defendant has already begun service of a sentence. "Obviously, a decision to revoke probation in no way interferes with the executive parole or clemency power." *Daly,* 839 F.2d at 601; *see also Durchslag,* 735 F.Supp. at 299 ("[r]evocation of probation, in contrast, does not pose the same kind of threat to the independent functioning of the executive

branch."). Even if the court were to revoke Myers' probation for acts committed while he was on parole, the court would have no power to determine the actual date of Myers' release.

It simply makes no logical sense to conclude, as Myers argues, that probation may be revoked for acts committed before service of the prison sentence, *e.g., Daly,* 839 F.2d at 599, and *Fryar,* 920 F.2d at 253–54; for acts committed during service of the prison sentence, *Yancey,* 827 F.2d at 84, and for acts committed while the defendant is on parole for a *separate* sentence, *Taylor,* 931 F.2d at 843, *but not* for acts committed while the defendant is on parole for a cumulative sentence of which the probation is a part. If these other recognized instances of pre-probationary revocation do not constitute an impermissible intrusion upon parole and executive clemency functions, it is difficult to comprehend how revocation under the facts of this case constitutes a qualitatively different and excessive interference with those functions. For example, where a defendant commits a wrongful act while incarcerated, he undoubtedly may be subject to loss of "good time" credits or the like, and his date of release may be deferred—decisions made by the executive branch, in which the court plays no part. To hold that the district court may revoke probation based on this same conduct committed during a custodial term, *see Johnson,* 892 F.2d at 370, but not based on conduct committed during a period of parole, makes little sense in terms of avoiding interference between judicial and executive functions.

That *Wright* creates an illogical limitation on the court's revocation power not intended by Congress is made even more apparent by Congress' amendment of the Probation Act.[6] The relevant provision

---

**5.** *See* 18 U.S.C. §§ 4201–4218 (creating the Parole Commission, authorizing it to grant or deny parole to eligible prisoners, to impose conditions of parole, and to modify or revoke parole). In passing the Sentencing Reform Act of 1984, Congress prospectively abolished the Parole Commission. The Commission ceases to exist this year, as provided by §§ 218(a)(5) and 235(a)(1), 98 Stat. 2027 and 2031. *Mistretta v.*

*United States,* 488 U.S. 361, 369 n. 4, 109 S.Ct. 647, 653 n. 4, 102 L.Ed.2d 714 (1989).

**6.** At the hearing on this motion, Myers' counsel contended that he was unaware of any case having taken issue with *Wright.* To the contrary, the Seventh Circuit panel deciding *Yancey* expressed "some doubt" about the correctness of *Wright,* but refused to take on the case directly

now states that the court may revoke probation for violations committed *"at any time prior* to the expiration or termination of the term of probation." 18 U.S.C. § 3565 (emphasis added). Although this amendment did not become effective until November 1, 1987—after Myers' offenses—it is evidence that Congress intended for the revocation power to extend from the date of imposition of the probationary sentence through to the conclusion of the probationary period. *Daly,* 839 F.2d at 601; *Yancey,* 827 F.2d at 87–88; *Durchslag,* 735 F.Supp. at 299.

■ Probation is merely a conditional suspension of a custodial sentence. *Camarata,* 828 F.2d at 979. It is a "matter of grace," *United States v. Tucker,* 444 F.2d 512, 513 (6th Cir.1971), the purpose of which is "to aid the rehabilitation of a penitent offender[.]" *Burns v. United States,* 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266 (1932). Probation provides an offender with "an opportunity to rehabilitate himself without institutional confinement under the tutelage of a probation official and under the continuing power of the court to impose institutional punishment for his original offense in the event that he abuse this opportunity." *Roberts v. United States,* 320 U.S. 264, 272, 64 S.Ct. 113, 117, 88 L.Ed. 41 (1943). The sentencing court's discretion in revoking probation is wide, *Tiitsman,* 536 F.2d at 681, and where a defendant indicates, through a "display of recidivous tendencies ... that he is unworthy of the opportunity for rehabilitation," *Veatch,* 792 F.2d at 52, the court's discretion should not be constrained by the fact that the defendant is currently on parole for another cumulative offense.[7]

In sum, this court declines to follow *Wright*'s holding. Assuming, therefore,

that the power to revoke probation before it commences exists at all under the relevant statutes—and the weight of the authority holds that it does—the court concludes that this power is not restricted while the defendant is on parole.

Accordingly, the court HEREBY ORDERS as follows:

1. Defendant's motion to vacate the show cause order is DENIED.

2. Pursuant to Fed.R.Crim.P. 36, the Judgment and Probation/Commitment Order is hereby amended as to Count Three to conform to the sentence imposed on July 27, 1987. In place of the language "to commence upon release from confinement imposed in Counts 1 and 2," the following language shall be inserted: "to commence upon the expiration of the five year terms imposed in Counts 1 and 2."

3. Defendant shall be made to appear before the court on July 1, 1992 at 2:00 p.m. and show cause, if any, why the order of probation made on July 27, 1987 should not be set aside and sentence imposed.

---

because the defendant in *Yancey* had not raised the issue on appeal. 827 F.2d at 88 n. 5.

7. Certainly, it would make little sense that a defendant who committed some heinous act shortly before the expiration of a sentence of incarceration but before the commencement of a subsequent probation period would not have to answer to the sentencing court for his act. Obviously, the defendant could be charged with a separate crime, conviction of which would

require the government to meet a higher burden of proof than it would to establish a probation violation. However, where the defendant has demonstrated that he was not entitled to the leniency afforded him for his previous crime, the power to revoke should include "the correction of a sentence based on an erroneous assumption that defendant would likely benefit from leniency." *Veatch,* 792 F.2d at 52.